UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRUSTEES OF THE IAM NATIONAL
PENSION FUND,

    *Plaintiff*,

v.

OHIO MAGNETICS, INC.,

    *Defendant*.

Civil Action No. 21-928 (RDM)

## MEMORANDUM OPINION AND ORDER

On April 6, 2021, the Trustees of the Iam National Pension Fund ("the Fund") filed this action against Ohio Magnetics, Inc. under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking to modify or vacate an arbitrator's award against the Fund and in favor of Ohio Magnetics on the grounds that the arbitrator misinterpreted the relevant provisions of ERISA. Dkt. 1. That same day, the Fund filed a second suit against Toyota Logistics Services, Inc., seeking relief from another arbitrator's award because that arbitrator, the Fund says, made the same interpretative mistake in applying the same provisions of ERISA. *See Trustees of the Iam Nat'l Pension Fund v. Toyota Logistics Services, Inc.*, No. 21-cv-931 (D.D.C.) (the "Toyota Logistics Action") (Dkt. 1 (Compl.)).

Now before the Court is the Fund's motion to consolidate this matter with the Toyota Logistics Action, which has been assigned to Judge Bates. Dkt. 12. The Court invited both Ohio Magnetics and Toyota Magnetics to file a response, Minute Order (June 18, 2021), and Toyota Logistics did so, opposing the Fund's motion, Dkt. 16. For the following reasons, the Court will **GRANT** the motion to consolidate.

Federal Rule of Civil Procedure 42(a) provides as follows: "If actions before the court involve a common question of law or fact, the court may[] (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).[1] As the statute's permissive language suggests, the Court "has broad discretion in determining whether to consolidate related cases." *Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13 (D.D.C. 2001). In exercising that discretion, the Court must "weigh considerations of convenience and economy against considerations of confusion and prejudice." *Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003). The balance will typically weigh in favor of consolidation if the two "actions present an identical question of law," and "consolidation would save time and effort . . . by resolving this issue in one proceeding rather than two." *Hanson v. District of Columbia*, 257 F.R.D. 19, 22 (D.D.C. 2009). Indeed, one of the core functions of consolidation under Rule 42(a) is to "relieve[] the parties and the Court of the burden of duplicative pleadings and Court orders." *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 148 (D.D.C. 2002). Consolidation in such circumstances also reduces "the risk of inconsistent rulings on common factual and legal questions." *Singh v. Carter*, 185 F. Supp. 3d 11, 18 (D.D.C. 2016). Consolidation is unwarranted, in contrast, "[i]f the parties at issue, the procedural posture[,] and the allegations in each case are different." *Hanson*, 257 F.R.D. at 21.

Here, the Fund is the plaintiff in both actions, and it is a multiemployer pension plan that is subject to ERISA's dictates. *See* Dkt. 4 at 2 (Am. Compl. ¶ 8); *Trustees of the Iam Nat'l*

---

[1] Local Civil Rule 40.5(d) provides that motions "to consolidate cases assigned to different judges of this Court shall be heard and determined by the judge to whom the earlier-numbered case is assigned." LCvR 40.5(d). Because this action is the "earlier-numbered case," *id.*, the Fund properly filed this motion in this action.

*Pension Fund v. Toyota Logistics Services, Inc.*, No. 21-cv-931 (D.D.C.) (Dkt. 1 at 2 (Compl. ¶ 8)) (the "Toyota Logistics Complaint").  In addition, both Ohio Magnetics and Toyota Logistics are similarly situated:  They are both employers that participated in the Fund pursuant to their collective bargaining agreements.  *See* Dkt. 4 at 3 (Am. Compl. ¶ 11); Toyota Logistics Compl. ¶ 11.  In 2018, moreover, both companies withdrew from the Fund, Dkt. 4 at 3 (Am. Compl. ¶ 12); Toyota Logistics Compl. ¶ 12, and, as a result, both were required to pay the Fund a "withdrawal liability," *see* 29 U.S.C. § 1391 (describing methods for computing withdrawal liability).  ERISA charges the Fund with determining each defendant's withdrawal liability as of "the end of the plan year preceding the plan year in which the employer withdraws."  29 U.S.C. § 1391(b)(2)(E)(i).  And because both "Ohio Magnetics and Toyota Logistics withdrew from the Fund in 2018, their withdrawal liability was based on" a calculation of their liabilities as of December 31, 2017.  Dkt. 12-1 at 5; *accord* Dkt. 16 at 4 ("[T]he Fund was required to measure Toyota Logistics' and Ohio Magnetics' withdrawal liability as of December 31, 2017.").

      The Fund's actuary calculated Ohio Magnetics' withdrawal liability as $477,475 and Toyota Logistics' withdrawal liability as $1,289,384.  Dkt. 4 (Am. Compl. ¶ 13); Toyota Logistics Compl. ¶ 13.  In making these calculations, the actuary needed to identify the appropriate "discount rate"—that is, the "interest rate [used] to discount Fund liabilities . . . to present value . . . for purposes of calculating the withdrawal liability."  Dkt 16 at 4.  In both cases, the Fund's actuary used the discount rate that the Fund adopted in January 2018, rather than the discount rate in effect as of December 31, 2017.  Dkt. 4 (Am. Compl. ¶ 16); Toyota Logistics Compl. ¶ 16.  This was not a minor difference.  The discount rate selected by the actuary was a full percentage point lower than the prior rate, and, as Toyota Logistics explains, "a lower discount rate assumption results in a higher amount of Fund liabilities, and, in turn, a

higher amount of withdrawal liability for employers." Dkt 16 at 4–5 & n.2; *see also* 29 U.S.C. § 1391 ("Methods for Calculating Withdrawal Liability").  The use of the January 2018 discount rate, rather than the prior rate, increased Toyota Logistics' withdrawal liability by $862,342, and—at least according to Toyota Logistics' estimate—likely increased Ohio Magnetics' withdrawal liability by hundreds of thousands of dollars as well.  Dkt. 16 at 10.

Ohio Magnetics and Toyota Logistics each challenged their withdrawal liabilities through separate arbitrations.  Dkt. 4 at 3 (Am. Compl. ¶ 15); Toyota Logistics Compl. ¶ 15.  Although different arbitrators heard the two disputes, the companies advanced the same argument: that the Fund's actuary erred by relying on the January 2018 discount rate, rather than the December 2017 rate.  Dkt. 4 at 3–4 (Am. Compl. ¶¶ 16–18); Toyota Logistics Compl. ¶¶ 16–18.  Both arbitrators agreed, finding that under ERISA the actuary should have used the discount rate in effect as of December 31, 2017.  Dkt. 4 at 3–4 (Am. Compl. ¶ 16); Toyota Logistics Compl. ¶ 16).  Both arbitrators, accordingly, directed the actuary to re-calculate the withdrawal liabilities for Ohio Magnetics and Toyota Logistics using that figure.  Dkt. 4 at 3–4 (Am. Compl. ¶¶ 17–18); Toyota Logistics Compl. ¶¶ 17–18.

The Fund brought this action and the Toyota Logistics Action, seeking to vacate or modify the arbitrators' awards. Dkt. 4 at 1(Am. Compl. ¶ 1); Toyota Logistics Compl. ¶ 1; *see also* 29 U.S.C. § 1401(b)(2) (authorizing "any party" to such an arbitration to "bring an action, no later than 30 days after the issuance of an arbitrator's award . . . to enforce, vacate, or modify the arbitrator's award").  Both cases involve the same question of law:  Under ERISA, should the Fund's actuary have used the discount rate in effect on December 31, 2017 to calculate the companies' withdrawal liabilities, or did the actuary permissibly use the discount rate in effect in January 2018?  *See* Dkt. 12-1 at 4 (arguing that both actions "turn on th[is] same question of

law"); Dkt. 16 at 8 (describing this issue as "a common question of law" between the two cases). Both cases remain in their early stages. Ohio Magnetics filed its answer on June 2, 2021, *see* Dkt. 10, and Toyota Logistics answered five days later, *see Trustees of the Iam Nat'l Pension Fund v. Toyota Logistics Services, Inc.*, No. 21-cv-931 (D.D.C.) (Dkt. 8 (Answer)). Neither case has proceeded beyond the initial pleadings.

The Fund argues that consolidation is warranted because "the two cases involve a common question of law" and "materially identical facts." Dkt. 12-1 at 4. In the Fund's view, consolidation would (1) "promote the judicial efficiency by having the same legal question presented to a single judge;" (2) "avoid the possibility of inconsistent rulings" on the same question; and (3) "reduce the parties' time and expense litigating these matters." *Id.* The Fund further maintains that neither defendant would suffer any prejudice as a result of consolidation because "[t]he two cases are in their nascent stages, and there is no need for discovery because the sole issue before the Court is whether to vacate or confirm the arbitration award." *Id.* at 4–5.

Toyota Logistics, in turn, responds that there are "factual differences between the two actions and the underlying arbitrations" and, thus, "any benefit in terms of judicial economy will be outweighed by the confusion and prejudice that consolidation will cause." Dkt 16 at 2; *see also id.* at 8–10. And the benefits of consolidation "will likely be minimal," according to Toyota Logistics, because a "single judge will need to perform the work of two judges" and because consolidation might lead to "inconsistent rulings" by encouraging the creation of a circuit split with the Second Circuit's decision in *Nat'l Ret. Fund v. Metz Culinary Mgmt.*, 946 F.3d 146 (2d Cir. 2020). Dkt. 16 at 10–12.

The Court agrees with the Fund and concludes that the "convenience and economy" of consolidation outweigh any "confusion and prejudice" that might result, *Chang*, 217 F.R.D. at

265. Most significantly, this case and the Toyota Logistics Action "present an identical question of law," *Hanson*, 257 F.R.D. at 22—namely, whether the Fund's actuary improperly used the January 2018 discount rate, rather than the prior date, in calculating the withdrawal liabilities for Ohio Magnetics and Toyota Logistics. As a result, "consolidation would save time and effort," *id.*, and "relieve[] the parties and the Court of the burden of duplicative pleadings and Court orders," *Microsoft*, 209 F. Supp. 2d at 148. Consolidation will also reduce "the risk of inconsistent rulings on common factual and legal questions," *Singh*, 185 F. Supp. 3d at 18. Although Toyota Logistics raises the specter of a split between this Court and the Second Circuit, *see* Dkt. 16 at 3, 12, that possibility exists regardless of whether these two cases are consolidated. The ill that Rule 42(a) seeks to avoid is the risk of inconsistent rulings *in the cases subject to consolidation*, and that is the risk that consolidation will avoid here. Finally, despite Toyota Logistics' predictions to the contrary, there is little risk of "confusion and prejudice," *Chang*, 217 F.R.D. at 265, in large part because both cases remain in "similar stages of litigation," *Steele v. United States*, No. CV 14-1523, 2015 WL 4121607, at *2 (D.D.C. June 30, 2015) (finding this factor relevant to consolidation analysis). Neither case has proceeded to discovery, and when that time comes, the parties agree that "there is no"—or at least very little—"need for discovery in either case because the sole issue before the Court is whether to vacate or confirm the arbitration award." Dkt. 12-1 at 4–5; *accord* Dkt. 16 at 2 ("[T]he actions will very likely be resolved by dispositive motions, without the need for discovery").

Nor is the Court persuaded that important "factual differences" between the cases render consolidation inappropriate. Dkt. 16 at 8–9. Toyota Logistics offers two such differences: (1) the respective arbitrators' findings with respect to the degree to which the Fund's Board influenced the actuary's decision to adopt the January 2018 discount rate, and (2) the disparity in

the "amounts in controversy" in the two actions. Dkt. 16 at 8–10.  Toyota Logistics' reliance on these factual issues is misplaced.  Although it is true that courts sometimes point to "factual distinctions" in denying consolidation, such differences are only one component of that analysis, and—as already discussed—other considerations, such as "the cases' respective procedural postures" and the nature of the allegations in each, *Singh,* 185 F. Supp. 3d at 26, weigh in favor of consolidation here.  But, in any event, the factual distinctions offered by Toyota Logistics are unlikely to predominate.  As Toyota Logistics acknowledges, neither arbitrator relied on the influence of the Fund's Board in rejecting the Fund's actuary's use of the January 2018 discount rate.  *See* Dkt. 16 at 6–7.  The difference, instead, is that the arbitrator who handled Ohio Magnetics' challenge found "a lack of evidence" of Board influence, while the arbitrator in the Toyota Logistics' acknowledged some "indicia of disquiet" but nevertheless found, "as a matter of law," that ERISA required the actuary to use the earlier discount rate.  *Id.* (internal quotation marks omitted).  That is a difference, but it is not sufficient to justify the entirely separate proceedings that Toyota Logistics advocates.  Similarly, the difference between the amounts arguably in controversy in the two cases—$862,342 in the Toyota Logistics Action and $319,336 in this one, according to Toyota Logistics, Dkt. 16 at 10—is unlikely to have any material bearing on the legal question that may resolve both cases.

## CONCLUSION

For these reasons, the Court concludes that consolidation of this case with the Toyota Logistics Action is warranted under Federal Rule of Civil Procedure 42(a)(1).  The Fund's motion to consolidate is, accordingly, **GRANTED**, and it is further **ORDERED** that the Clerk of the Court shall reassign Case No. 21-cv-931 to the undersigned judge.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 16, 2021